**Hearing Date: January 19, 2016 at 2:00 p.m.**

THE LAW FIRM OF RAVI BATRA, P.C.
The Batra Building
142 Lexington Avenue
New York, NY 10016
(212) 545-1993
Ravi Batra (RB 4299)
ravi@ravibatralaw.com
Todd B. Sherman (TS 4031)
todd@ravibatralaw.com
*Attorneys for Debtor Blanca S. Schietekat*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In Re

BLANCA S. SCHIETEKAT,

     *Debtor*.

Last 4 digits of Social Security No.
XXX-XX-8435

Chapter 7

Case No. 10-44051 (CEC)

**REPLY IN FURTHER SUPPORT OF MOTION TO REOPEN**
**BANKRUPTCY CASE**

The Debtor herein replies by her undersigned counsel to the objection interposed by

certain of the state court defendants,[1] to her motion to reopen her bankruptcy case, pursuant

to 11 U.S.C. § 350(b) and Fed. R. Bankr. P. 5010, and respectfully sets forth and alleges:

---

[1] These objecting jointly represented state defendants are Stephen Merola, M.D., Andrew
Nguyen, M.D., Sharone M. Jacobs, M.D., Sreejit Nair, M.D., Ionie Chambers, R.N., Vandana Minnal,
M.D, New York. Hospital Medical Center of Queens; and, CRT Surgical Associates, P.C.("objectants").

1.    **The Objectants Lack Standing**. A "central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) *quoting*, *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). This is the legislature's intended "fresh start" policy. *Id.*. Accordingly, as the purpose of the Bankruptcy Court is to judicially manage the interactions between debtors and creditors as debtors seek to "reorder their affairs," an objectant who is neither debtor nor creditor ought lack standing to object to relief granted in bankruptcy. *See, e.g.*, *Hunter v. Commerce Trust Co.*, 55 F.2d 1, 3 (8th Cir. 1932) ("[t]he question as to whether the estate shall be reopened concerns merely the bankrupt and his creditors. Adverse claimants to the bankrupt's property have no direct interest in that question").

2.    **No Prejudice to the Objectants**. Nothing about the Debtor's pending application impacts the rights of the objectants. They will encounter absolutely no prejudice. Indeed, while they speak of delay in the state court proceedings, these defendants' ought look in the proverbial mirror to see the substantial cause. While it is conceded that the initial "Preliminary Conference" was not expeditiously sought, the objectants themselves had provided scant amounts of documentary disclosure - despite their obligations under New York state law. In stark contrast, the Debtor, as state plaintiff, was responsive to the objectants proper demands.

3.      Furthermore, there is simply no support for the objectants' misguided contention that medical records may somehow "disappear." On the contrary, the objecting defendants are themselves the custodian of nearly all of the medical records except those limited relevant records which concern treatment **after** the alleged malpractice. Notably, those records are more recent. Furthermore, Debtor, as plaintiff, has already authorized the state defendants to access related medical records from non-party sources.

4.      The objectants "ha[ve] not shown that [they] will be prejudiced other than by having to defend the Malpractice Action on the merits if this case is reopened." *In re Arana*, 456 B.R. 161, 177 (Bankr. E.D.N.Y. 2011). ***This is not prejudice***. Rather,

> the obligation to defend a claim on the merits is not the kind
> of legal prejudice that should stand in the way of a trustee's
> administration of property of a bankruptcy estate and this
> factor, standing alone, should not be a bar to reopening a case.

*Id*. at 174. Indeed, the loss of a potential defense "does not outweigh the benefit to the creditors and the Debtor of reopening the case or warrant denial of the Debtor's motion." *In re Stein*, 394 B.R. 13, 18 (Bankr. E.D.N.Y. 2008).

5.      By their objections, the state defendants seek to secure an unwarranted windfall by escaping liability for their acts and omissions. This is exactly what should be avoided. Indeed, in pertinent part

> 'the bankruptcy case should ordinarily be reopened so the
> asset can be administered to ***prevent a windfall to the
> defendant***.'

3

*Arana*, 456 B.R.at 173 *quoting*, 3 Collier on Bankruptcy ¶ 350.03[1] at 350–7 (***emphasis added***).

6.    **The Objectants' Recitation of § 341 Testimony Confirms Debtor Testified Accurately**. In an attempt to paint an unbalanced picture of the Debtor's claims, the objectants contend that during Debtor's § 341 hearing, the following testimony occurred:

> Q.    Are you suing anyone in a car accident, malpractice or any other reason?
> A.    No.

(Leto Aff. [Dkt. 20] ¶ 5). ***That testimony was entirely accurate***. At the time of any § 341 hearing, the Debtor did not have any lawsuits pending. Moreover, as Debtor proffered in her Declaration to this Honorable Court which accompanied her motion-in-chief, when debtor's petition was pending, she did not know if a medical malpractice action ***would*** be or ***could*** pursued on her behalf. (Debtor Decl. ¶ 13). Moreover, Debtor confirmed that she did not inform the undersigned that she had sought bankruptcy protection until after the state court action was commenced. *Id*. at ¶ 15.

7.    Harping on an irrelevancy, the objectants make unnecessary noise about their claim that the § 341 hearing was apparently "conducted without an interpreter" (Leto Aff. [Dkt. 20] ¶ 5).The Debtor did ***not*** claim a complete inability to speak or understand English. Rather, as even memorialized in the objecting state defendants' objections,  the Debtor forthrightly informed this Honorable Court that "while I can speak some English I

am *not fluent* in the English language, I am fluent in the Spanish language." *Id.*

*(emphasis added)*. *See also*, Debtor Decl. ¶ 3. Moreover, conveniently omitted from the

state court defendants' objections is reference to Debtor having also informed this

Honorable Court that she is *"not familiar with legal terminology* in English, nor [is she]

conversant with legal terminology in Spanish." (Debtor Decl. ¶ 5) *(emphasis added).*

Thus, beyond debtor's limitations with English, she has *no knowledge of legalese* in

either language.

        8.     **<u>The Objectants' Offensive Presumptions are Devoid of Merit</u>**. The

objectants suggest that notwithstanding that the undersigned and my law firm were

unaware of the Debtor's predecessor bankruptcy counsel's failure to schedule Debtor's

potential medical malpractice claim until after the last (first and only) conference in state

court, that somehow information was withheld at that time to prevent the defendants from

moving to dismiss the state court action. To what end? The records of the Bankruptcy

Court are public and the objectants were free to run a "PACER" search of the Debtor as

the plaintiff bringing a claim against them. In any event, had we known of the issue

sooner, we would have addressed it sooner. It is respectfully submitted that we reacted

promptly - preparing and filing the motion with this Honorable Court within a month of

there even being a suggestion that Debtor's filings in this Honorable Court (made by

other unrelated counsel, without our knowledge, input or involvement) may have been

deficient.

9.      Furthermore, the state court defendants, without a sliver of fact, frivolously suggest that Debtor "[s]urely [ ] would have told Mr. Batra she also had a bankruptcy proceeding pending." (Leto Aff. [Dkt. 20] ¶ 6). Indeed, the Debtor has already informed this Honorable Court that she

> did not inform Mr. Batra that I declared bankruptcy until after his firm had started a medical malpractice case for me because I believed it was a separate unrelated matter.

(Debtor Decl. ¶ 15). Furthermore, in the undersigned's application for relief on behalf of the Debtor, I made clear that myself

> and my firm *were not Debtor's bankruptcy counsel at the time of the petition nor were we involved with any prior proceedings in the Bankruptcy Court*. Rather, we are the attorneys representing Debtor in the pending state medical malpractice action.

(Batra Appl. ¶ 12) (*emphasis added*). Additionally, and rather critically, I further accurately represented that

> *[w]ithout any knowledge of a preexisting bankruptcy filing or bankruptcy discharge*, we commenced this action in New York State Supreme Court on behalf of the Debtor, as plaintiff, and have pursued it since commencement . . .

(Batra Appl. ¶ 18) (*emphasis added*). Defendant's baseless presumptions and misguided inferences are debunked by the record. Surely, the objecting defendants are wrong!

10.      At no time prior to a review of Debtor's bankruptcy filings, secured from PACER, on or about November 23, 2015 did we have any reason to believe that there was any deficiencies in Debtor's prior filings with this Honorable Court. We acted promptly

once we realized there was even the potential that prior filings were in error. Despite the

state defendants' counsel's offensive suggestions to the contrary, my firm was previously

unaware that there were any issues with the Debtor's bankruptcy court filings or any

impact on the pending state court proceedings.

11.    The suggestion that there was an appearance in court with this information

fully available and yet undisclosed is entirely wrong and patently offensive. There was no

attempt to secrete information from the state defendants and their attorneys - indeed, our

instant motion was intended to be inclusive and informative.[2]

12.    **The Objectants Mis-rely on Decisional Law**. The objecting state court

defendants' reliance on *In re Meneses*, 2010 WL 813975 (Bankr. E.D.N.Y. Mar. 3, 2010)

is misleading. In *Meneses*, the Debtor's action was dismissed in federal district court due

to lack of standing as a result of a failure to disclosed his claim on a bankruptcy petition.

Here, Debtor has acted promptly before there could even be contemplation of dismissal of

---

[2]Counsel for the objecting state court defendants offensively affirmed that

> [i]t is *presumed* therefore [Debtor's tort counsel] already knew at the time of the conference of the bankruptcy but waited until now to tell any of the parties to the malpractice action about it so that they would not have time to make a motion in state court to dismiss.

(Leto Aff. [Dkt. 20] ¶ 8) (*emphasis added*). Clearly, counsel is inferring that we knew that there was a problem with Debtor's filings in bankruptcy court and withheld it to avoid a motion to dismiss. That, however, makes little to no sense. Ultimately, the bankruptcy would become known and throw the entire state court proceeding into an unnecessary upheaval. Moreover, even if there were a dismissal in state court, the statute of limitations would be extended for six (6) months post-dismissal to permit a Trustee to start the case anew. C.P.L.R. § 205(a).

the state court action. Furthermore, in *Meneses*, the debtor was actively engaged in attempting to resolve his civil claims, which were not listed on the petition, *during the pendency of the bankruptcy proceeding*. *Id*. at \*2. Thus, there is simply no question that *Meneses* knew he actually had a viable civil claim before his bankruptcy was closed. That is a far cry from here. Additionally, during the § 341 hearing, *Meneses* testified that (a) he was not suing anybody; and, (b) he had no claims where he could sue somebody. *Id*.. That too is completely dissimilar from the facts at bar. Here, the Debtor was not pursuing a claim against any person or entity during the pendency of prior proceedings in this Honorable Court. Moreover, the objecting state defendants had no choice but to admit (though they attempted to skew the picture) that Debtor was asked if she was then suing someone, which she was not. (Leto Aff. [Dkt. 20] ¶ 5 *quoting*, § 341 hearing). Additionally, the federal district court gave *Meneses* a time frame in which to act after dismissal of his claims on standing grounds (because of the bankruptcy), yet *Meneses* did not make his motion to reopen the bankruptcy case until two-months after the 90 day deadline had expired. *Id*.. Indeed, in denying his motion to reopen, the Bankruptcy Court noted that Meneses "waited until after his options to reopen his case in the District Court had been foreclosed before even filing this Motion." *Id*. at \*3. This too is wholly different from the facts at bar where the Debtor has acted promptly upon learning of an issue with prior filings with this Honorable Court.

13.     Relying on *In re Farley*, 451 B.R. 235 (Bankr. E.D.N.Y. 2011), the

objectants urge "that the Court will limit the exercise of its discretion to reopen a closed

case 'where reopening is futile or a waste of judicial resources.'" (Leto Aff. [Dkt. 20] ¶

10 *quoting*, *Farley*, 451 B.R at 237). Importantly, the objectants took the Bankruptcy

Court's quoted language out of context. In its entirety, the Court stated that

> this Court will only exercise its discretion to reopen a case in circumstances
> ***where relief may ultimately be afforded to a party***, but not where
> reopening is futile or a waste of judicial resources.

*Farley*, 451 B.R. at 237 (***emphasis added***). The meaning is clear: if by reopening the case

a Debtor (or creditor) cannot secure a benefit, the Court will not and should not expend

time and resources on readdressing the closed case. Here, however, the Debtor ***can*** secure

a benefit to her creditors and to herself. The Debtor has meritorious claims of medical

professional negligence that should not go unanswered. The negligence matter should be

pursued, either by the Trustee, or by the Debtor if the Trustee elects to abandon same to

her. 11 U.S.C. § 554(c). In any event, until that determination is made, absent an order of

this Honorable Court, the claim likely remains the property of the bankruptcy estate. 11

U.S.C. § 554(d). As the claim may have significant value to creditors and the Debtor,

reopening the Debtor's bankruptcy case is proper. *See, e.g.*, in *In re Warmbrand*, 2013

WL 10974204, *7 (Bankr. E.D.N.Y. Oct. 17, 2013) ("if these cases are not reopened,

there is no prospect of any recovery to creditors").

**WHEREFORE**, the Debtor respectfully requests that the Court dismiss the objections and grant the Motion, reopen the Debtor's case, pursuant to 11 U.S.C. § 350(b) and Fed. R. Bankr. P. 5010, so as to permit amendment of the Debtor's petition and schedules to ensure that the medical malpractice case may be pursued, along with all further relief favorable to the Debtor as the Honorable Court may find to be just, proper and equitable.

Dated:  January 14, 2016
        New York, New York

THE LAW FIRM OF RAVI BATRA, P.C.

By:    /s/ *Ravi Batra*
        Ravi Batra (RB 4299)
        Todd B. Sherman (TS 4031)
        The Batra Building
        142 Lexington Avenue
        New York, NY 10016
        (212) 545-1993

        *Attorneys for Debtor Blanca S. Schietekat*